UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: CDM RESOURCE MANAGEMENT LLC** | **CIVIL ACTION** |
| | **No. 15-112** |
| | **SECTION I** |

### ORDER AND REASONS

Petitioners have filed a motion[1] for partial summary judgment with respect to their claim for entitlement to limitation of liability pursuant to the Limitation of Liability Act, 46 U.S.C. §§ 30505, *et seq*. Claimant, Gary Hyatt ("Hyatt"), has filed a brief in opposition[2] in which he argues that partial summary judgment is precluded because petitioners' claim under the Act was untimely and, even if it was timely, fact issues preclude summary judgment. The Court concludes that petitioners' limitation action was untimely filed. Accordingly, the Court **DENIES** the motion for partial summary judgment and **DISMISSES** this action for lack of subject matter jurisdiction.

### BACKGROUND

Hyatt was employed as a field technician by one of the petitioners, CDM Resource Management LLC ("CDM"), beginning in 2011.[3] CDM contracts with customers to provide natural gas compressors and technicians to service and repair those compressors. Hyatt serviced eleven compressors for CDM which were scattered in Louisiana territorial waters in and around

---

[1] R. Doc. No. 33.
[2] R. Doc. No. 35. Petitioners then filed a reply to Hyatt's opposition. R. Doc. No. 42.
[3] The other petitioners, Regency GP, LLC, Regency Energy Partners, LP, Energy Transfer Partners, LP, and Hilcorp Energy Company, are parties that are sought to be held liable as owners, operators, charterers, and/or controllers of the vessel on which Hyatt was injured. Although only CDM owned the vessel, these petitioners are proper parties to this action because alleged owners are considered "owners" under the Limitation of Liability Act. *See, e.g., In re Shell Oil Co.*, 780 F. Supp. 1086, 1090 (E.D. La. 1991).

Terrebonne Bay. CDM owned and provided a boat, the Miss Laurie, in order to permit Hyatt and CDM's other technicians to travel to the compressors they serviced.

The accident giving rise to this litigation occurred on the night of December 6, 2013, when the Miss Laurie struck an object while on the way to a compressor. Hyatt was a passenger on the vessel at that time and he was allegedly injured as a result of the accident. The cause of the accident, although disputed, is not material to the determination of the issue before the Court. Rather, of more importance is what occurred between Hyatt and CDM after the accident.

As petitioners admit in their brief, a series of emails were exchanged between Hyatt and CDM beginning in January 2014. This correspondence included several emails between workers' compensation personnel concerning Hyatt's medical treatment, a request for medical treatment under the Louisiana Workers' Compensation Act, and—most importantly—a July 8, 2014 letter faxed to CDM from Hyatt's attorney.[4] The attorney's letter advised CDM that he had been retained to represent Hyatt "with regard to damages [Hyatt] sustained as a result of the allision involving the M/V Miss Laurie that occurred on December 6, 2013."[5] The letter further requested that CDM provide the attorney with, among other things, Hyatt's personnel file and medical records, photographs of the damage to the Miss Laurie, any and all statements Hyatt had made regarding the accident, any and all documentation and communication to or from any healthcare provider related to Hyatt's injuries, and a copy of the incident report relating to the accident.[6]

On December 1, 2014, Hyatt filed a lawsuit against petitioners in Louisiana state court. On January 16, 2015,—over six months after petitioners received the July 8, 2014 letter from Hyatt's attorney—petitioners instituted a limitation action in this Court pursuant to the

---

[4] R. Doc. Nos. 35-2, 35-3, 35-4, 35-5, 35-7, 35-8.
[5] R. Doc. No. 35-9.
[6] R. Doc. No. 35-9.

2

Limitation of Liability Act ("Limitation Act"), 46 U.S.C. § 30511, and the Federal Rules of Civil Procedure, Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims.[7] Petitioners asserted in the amended complaint for exoneration from or limitation of liability that the value of the Miss Laurie along with its pending freight would not exceed $92,000 dollars.[8] As a result of petitioners' initiating this action, this Court issued an order on February 6, 2015, staying and restraining all other legal proceedings related to the Miss Laurie's December 2013 accident.[9]

## LAW AND ANALYSIS

### I. STANDARD OF LAW

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of

---

[7] R. Doc. No. 1.
[8] R. Doc. No. 7, at 4.
[9] R. Doc. No. 8. The Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims Rule F(4), provides that when a limitation of liability proceeding is instituted in federal court, the court is empowered to establish a monition period during which all claimants must file their respective claims or face default. Accordingly, claimants Gary Hyatt and Wendy Hyatt filed a claim for damages in this Court. R. Doc. No. 9.

material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id*. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## II. ANALYSIS

### A. The legal standard for a timely action.

Pursuant to the Limitation Act, a shipowner facing potential liability from an accident at sea has the right to petition a federal district court to limit liability to the value of the vessel and the pending freight. 46 U.S.C. §§ 30505, 30511; *In re Blessey Enterprises, Inc.*, 537 F. App'x 304, 305 (5th Cir. 2013). The action for limitation of liability "must be brought within six months after a claimant gives the [vessel] owner written notice of a claim." 46 U.S.C. § 30511(a). This Court lacks subject matter jurisdiction over an untimely filed limitation action. 46 U.S.C. § 30511(a) (2012) (this provision was previously codified at 46 U.S.C. app. § 185). The fact that a federal district court has original jurisdiction over admiralty claims does not change this result. *In re Eckstein Marine Serv. L.L.C.*, 672 F.3d 310, 315 (5th Cir. 2012).[10]

---

[10] Under 28 U.S.C. § 1333(1), a plaintiff may elect to bring admiralty and maritime claims in state rather than federal court. *In re Eckstein Marine Serv. L.L.C.*, 672 F.3d at 315. "These

4

The Limitation Act does not define "written notice of a claim." The U.S. Fifth Circuit Court of Appeals, however, has set forth the standard a claimant must satisfy in order to show that he provided a communication that meets the requirements of 46 U.S.C. § 30511(a), thereby triggering the six-month window to bring a limitation action. As the Fifth Circuit explained at length in a recent opinion:

> We have said that a communication qualifies as "written notice" if it "reveals a 'reasonable possibility' that the claim will exceed the value of the vessel." This standard evokes two inquiries: (1) whether the writing communicates the reasonable possibility of a claim, and (2) whether it communicates the reasonable possibility of damages in excess of the vessel's value. Answering these questions requires a "fact-intensive inquiry into the circumstances of the case."
>
> The purpose of the "reasonable possibility" standard is to place the burden of investigating potential claims on the vessel owner:
>
>> The Limitation Act provides generous statutory protection to the vessel owners who reap all of its benefits. When there is uncertainty as to whether a claim will exceed the vessel's value, the reasonable possibility standard places the risk and the burdens associated with that risk on the owner. In other words, if "doubt exists as to the total amount of the claims or as to whether they will exceed the value of the ship the owner will not be excused from satisfying the statutory time bar since he may institute a limitation proceeding even when the total amount claimed is uncertain."
>
> Assigning the risk of uncertainty to the vessel owner fits the purpose of the six-month limitation, which is "to require the shipowner to act promptly to gain the benefit of the statutory right to limit liability." Thus, "[o]nce a reasonable possibility has been raised, it becomes the vessel owner's responsibility to initiate a prompt investigation and determine whether to file a limitation action." We emphasize that the standard is a reasonable possibility, not a reasonable probability. Although this standard "is not toothless, it is also not particularly stringent."
>
> We have said less about what a communication must contain to qualify as such a written notice under the Act. A state court complaint clearly gives notice of the

---

'cannot be removed in the absence of diversity' unless 'there exists some basis for jurisdiction other than admiralty.'" *Id.* (citation omitted).

Hyatt chose to file his complaint in state court. This Court's admiralty jurisdiction therefore cannot, in and of itself, provide the Court with subject matter jurisdiction over any part of this litigation. *Id.* Only Hyatt's complaint under the Limitation Act is properly before this Court, which requires CDM to follow the Act's mandatory filing deadline. *Id.*

> claim itself. A demand need not express a specific quantum of damages so long as there is a reasonable possibility that a claim's value will exceed the value of the vessel. This court has not, however, addressed what is required for a written communication that is not a filed complaint to qualify as notice.

*In re The Complaint of RLB Contracting, Inc., as Owner of the Dredge Jonathan King Boyd its Engine, Tackle, Gear for Exoneration or Limitation of Liab.*, 773 F.3d 596, 602–03 (5th Cir. 2014) (citations omitted)(hereinafter *RLB Contracting*).

The Fifth Circuit proceeded in *RLB Contracting* to explicitly clarify "that a written communication may serve as notice under the Act in lieu of a filed complaint." *Id.* at 603. Furthermore, the court noted that "the statutory text does not foreclose the possibility of aggregate notice; it only requires the claimant to give 'the owner written notice,' not *a* written notice. In fact, some district courts, including one in this circuit, have considered a body of correspondence rather than each of its individual constituent parts in a vacuum." *Id.* Accordingly, the Fifth Circuit held that "[i]n situations like this one, in which the vessel owner and the putative claimant corresponded over time, . . . [c]onsidering the correspondence as a whole better approximates what the vessel owner, as the recipient of all of the writings, should have thought was a 'reasonable possibility' of a potential claim and its value." *Id.* at 603–04.

In *RLB Contracting*, the "[claimant's] first letter instructed [the vessel owner] 'to preserve evidence as if a suit had been initiated'; his [subsequent email] mentioned the evidence he had already gathered and requested mediation 'before any lawsuit'; his email . . . of the following year discussed state and federal venues for the suit and again requested mediation; finally, his [last two emails] explicitly [brought] up filing the lawsuit and service of process." *Id.* at 604. The Fifth Circuit found that, by the final email "at the latest," the correspondence provided the vessel owner with notice of a potential claim. *Id.* at 605.

As to notice that there was a "reasonable possibility" that the claim would be for damages in excess of the vessel's value, the court in *RLB Contracting* found that the vessel owner had received such notice even though the claimant's correspondence "never gave a specific number." *Id.* Instead, the Fifth Circuit agreed with its conclusion in a prior case that "in light of the severity of the injuries, a vessel owner should have realized the potential of damages in excess of its vessel's value . . ., and that any uncertainty was the owner's burden to resolve." *Id.* Because the accident in *RLB Contracting* involved the death of a child, the vessel owner should have realized that the action "would easily exceed $750,000[, the value of the vessel,] in potential damages." *Id.* at 606.

**B. Upon receiving the letter from Hyatt's attorney, CDM should have realized there was a "reasonable possibility" of a potential claim against CDM whose value would exceed the value of the Miss Laurie.**

The correspondence regarding Hyatt's medical treatment and the letter from Hyatt's attorney, which was clearly sent in anticipation of litigation, were sufficient to put CDM on notice of the reasonable possibility of a claim exceeding $92,000 dollars, the value of the Miss Laurie and its pending freight.[11] Indeed, at the time CDM received the attorney's letter, the correspondence regarding Hyatt's medical treatment and prognosis had already made CDM aware that Hyatt had been diagnosed with acute low back syndrome and sciatica,[12] that surgery might be necessary,[13] and that Hyatt himself believed his injury could be a "life changing event."[14] This information indicated a reasonable possibility that Hyatt could claim entitlement to more than $92,000 in a lawsuit.

---

[11] Although *RLB Contracting* was not published until December 3, 2014, the decision did not create new law in the Fifth Circuit with respect to the written notice requirements. Rather, the case simply made the Fifth Circuit's views explicit.
[12] R. Doc. No. 35-4.
[13] R. Doc. No. 35-3, at 1.
[14] R. Doc. No. 35-5.

As *RLB Contracting* concluded, "the issue [of which the vessel owner must be made aware] is the 'reasonable possibility' that a claim *exists*, not probability of success on the merits." *Id.* at 604. Accordingly, all that was necessary to satisfy the notice requirement was that CDM be made aware (as a result of a writing or written correspondence) of a "reasonable possibility" that a *claim* would be made against CDM for more than the value of the vessel. The *merit* of the potential claim was irrelevant. It follows that whether surgery was *actually* necessary and whether Hyatt's injury was *actually* life changing is less important to this issue than is Hyatt's belief in that state of affairs. It was Hyatt's unmistakable belief in the severity of his injuries, which was clearly communicated to CDM via a series of emails, combined with the retention of an attorney who essentially directed CDM to aid Hyatt in discovery, which should have put CDM on notice of the reasonable possibility of a claim. Petitioners' contentions that "[n]one of the correspondences inform that [Hyatt] intends to seek damages or make a claim of any type," "[n]one of the correspondences inform of [Hyatt]'s intention to hold CDM (or anyone else for that matter)[15] responsible for the alleged damages," and "[n]one of the correspondences address the value of any alleged damages" are unconvincing.

Petitioners also argue that Hyatt's notice was insufficient because, at most, it provided CDM with notice that Hyatt would assert a workers' compensation claim, which petitioners assert is not a claim that is "subject to limitation."[16] As support for this argument, petitioners cite three cases involving the effect of workers' compensation claims on the notice requirement,

---

[15] CDM was both Hyatt's employer and the owner of the Miss Laurie. The letter from Hyatt's attorney was also directed to CDM. It follows that the possibility of litigation indicated in that letter clearly signaled that a potential claim would at least include CDM as a defendant.
[16] R. Doc. No. 42, at 2–3.

all of which are only persuasive authority and each of which is distinguishable from the facts of this case.[17]

In the first case, *In re Complaint of A.P. Franz*, a New York U.S. District Court found that an application for workers' compensation benefits, a letter to the workers' compensation board, and a report prepared by the employer as required by the Longshore and Harbor Workers' Compensation Act (LHWCA) were insufficient to provide notice of a claim subject to limitation. 7 F.Supp.3d 238, 241 (N.D.N.Y. 2014).  *A.P. Franz* is not persuasive as this Court does not rely on an application for benefits, a letter to the workers' compensation board, or an LHWCA report in concluding that Hyatt provided sufficient notice.

In the second case, *In re McCarthy Bros. Co.*, the Seventh Circuit held that an attorney's letter to the vessel owner did not constitute sufficient notice where a workers' compensation claim had already been filed and the attorney's letter merely placed the owner on notice of an attorney's lien and revoked prior medical authorizations provided to the owner.  83 F.3d 821, 825 (7th Cir. 1996).  In its introduction in the letter, the attorneys stated that "we have been retained to represent [the employee] for injuries he sustained on [a certain date], for which he claims you are responsible." *Id.*  The Seventh Circuit held that this phrase by itself was not enough to provide reasonable notice of the possibility of a claim.  *Id.* at 829.  That result is unsurprising, given that the body of the letter simply notified the owner of an attorney's lien and revoked medical authorization.  Unlike in this case, in *McCarthy Bros. Co.* there was no directive to the owner to begin aiding in discovery by turning over an itemized list of information that would be relevant to a claim.

---

[17] Another case cited by petitioners, *Billiot v. Dolphin Services, Inc.*, did not involve a potential workers' compensation claim.  225 F.3d 515 (5th Cir. 2000).  Rather, the issue in that case was whether a state court complaint that improperly named the vessel on which the claimant was injured constituted sufficient written notice of a claim to the owner of the correct vessel.  *Id.* at 516.  The Fifth Circuit held it did not.  *Id.* at 518.  *Billiot* is of no relevance here.

9

In the third case cited by petitioners, *In re Texaco, Inc.*, Judge Mentz held that correspondence concerning "[the employee's] ability to receive compensation, either under the state workers' compensation laws or under the Longshoreman and [sic] Harborworker's Act," did not provide the vessel owner with notice of the possibility of a claim subject to limitation. No. 90-4056, 1991 WL 267752, at *2 (E.D. La. June 20, 1991). The case is clearly distinguishable from the one before the Court, where the July 8, 2014 letter from Hyatt's attorney was not part of an ongoing dialogue between attorneys and an employer regarding workers' compensation benefits and where there existed no dispute regarding Hyatt's eligibility for those benefits.

In short, the holdings in *A.P. Franz*, *McCarthy Bros. Co.*, and *Texaco, Inc.*,—none of which are binding on this Court—were fact-specific and distinguishable from the present circumstances. The Fifth Circuit has held that "[a]nswering [the question of what constitutes sufficient notice] requires a fact-intensive inquiry into the circumstances of the case." *RLB Contracting*, 773 F.3d at 602. In this case, petitioners concede that "after the alleged incident, [Hyatt] received (and still receives) workers' compensation benefits."[18] Given that there had been no disputes regarding Hyatt's eligibility for those benefits when the July 8, 2014 letter was received by CDM, the Court is not persuaded by CDM's contention that the letter did not indicate the possibility of a claim for something other than workers' compensation.

The notice requirement of 46 U.S.C. § 30511(a) "is . . . not particularly stringent." *RLB Contracting*, 773 F.3d at 603. As the Fifth Circuit emphasized in *RLB Contracting*, a claimant is only required to raise "a reasonable *possibility*" that a claim exceeding the vessel's value will be brought, not "a reasonable *probability*" that such an action will be instituted. *Id.* at 603. It is at

---

[18] R. Doc. No. 42, at 3.

this point that the vessel owner has a "responsibility to initiate a prompt investigation and determine whether to file a limitation action." *Id.* Instead of taking action upon receipt of Hyatt's attorney's letter, CDM adopted a wait-and-see approach. Such an approach can lead to an adverse result under the reasonable possibility standard which places "the risk and the burdens associated with that risk on the [vessel] owner." *Id.* at 602. Although CDM's failure to act may not have been deliberate, its limitation action was nevertheless untimely.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that petitioners' motion for partial summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that the above-captioned case is **DISMISSED** for lack of subject matter jurisdiction, each party to bear its own costs.

**IT IS FURTHER ORDERED** that this Court's previous order[19] staying and restraining all other suits, actions, or legal proceedings arising out of or in connection with the voyage of the Miss Laurie on December 6, 2013, is hereby **VACATED AND DISSOLVED**.

New Orleans, Louisiana, October 27, 2015.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[19] R. Doc. No. 8.